**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

BAITUL JAVID, Individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

FINASTRA TECHNOLOGY, INC.,

Defendant.

CASE NO:

**CLASS ACTION COMPLAINT**

**DEMAND FOR A JURY TRIAL**

**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**

Plaintiff Baitul Javid ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Finastra Technology, Inc. ("Finastra" or "Defendant"), seeking monetary damages, restitution, and declaratory and injunctive relief for the proposed Classes, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I. INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devastating. It is not only an intrusion of privacy and a loss of control, but also a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have a grave consequences for victims

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, S.C. Lawyer (May 2014).

for years after the actual date of the breach. With the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, collect government benefits, or secure driver's licenses in the victims' names. Data breaches force victims to maintain constant vigilance over the misuse of their information.

2. Finastra is a leading financial services software company. Among Finastra's software products are applications assisting banks, lenders, asset managers, and other financial institutions with payments, trading, front-office management, regulatory reporting, compliance, and lending. Finastra's clients include approximately 8,100 financial institutions and 45 of the world's top 50 banks. The company is involved in the transfer of $7 trillion in assets every day and serves clients in over 130 countries.

3. On or about June 30, 2025, Finastra began releasing notices to individuals whose data was compromised as a result of a data breach that the company discovered on November 7, 2024 (the "Data Breach").

4. In the notice, Finastra admitted that it became aware of unusual activity on some of its computer systems on November 7, 2024, and that it subsequently investigated the data breach. The investigation concluded that an unauthorized party obtained access to company files between October 31, 2024, and November 8, 2024.

5. Finastra waited 8 months after learning of the data breach before notifying Plaintiff and class members or the public that Finastra's systems had

been breached and that Plaintiff and Class Members' data had been compromised. As a direct result of Finastra's delay, Plaintiff and Class Members were unaware of the breach and the compromise of their Personally Identifiable Information ("PII") for approximately 8 months after Finastra detected it.

6. Despite knowing how valuable customer information is, Defendant failed to adequately protect Plaintiff and Class Members' Personally Identifiable Information ("PII"). This PII was compromised due to Defendant's negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiff and Class Members, will remain for their respective lifetimes.

7. As a result of the Data Breach, through which their PII was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and Class Members will incur ongoing out-of-pocket costs (*e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft).

8. By this Complaint, Plaintiff seeks to remedy these harms on behalf of

herself and all similarly situated individuals whose PII was accessed during the Data Breach.

## II. PARTIES

### A. Plaintiff Baitul Javid

9. Plaintiff Baitul Javid is a citizen of Illinois and resides in the city of Chicago.

10. Plaintiff received a letter from Finastra dated June 30, 2025 informing her of the data breach and that the breach exposed PII of hers, including her social security number, date of birth, and financial account number.

11. Upon information and belief, Finastra received Plaintiff's PII from JPMorgan Chase Bank, N.A., which does business as Chase Bank and which is a wholly owned subsidiary of JPMorgan Chase & Co. On information and belief, Plaintiff's PII was provided to Finastra through her relationship with Chase Bank.

### B. Defendant

12. Finastra is a New York corporation with a principal place of business at 744 Primera Blvd, Suite 2000, Lake Mary, Florida, 32746.

## III. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds

$5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

14. The Court has jurisdiction over Defendant because Finastra maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

15. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant's principal place of business is in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## IV. FACTUAL BACKGROUND

### A. The Data Breach Occurred Because Finastra Failed to Protect Private Data Which the Company Obtained From Its Clients.

16. Finastra advises the public that its services are "reliable, secure, and trusted," that "security [is] baked in" with "end-to-end encryption, access controls and secure data flows," and that the company offers "real-time fraud protection, high uptime and global support."[2]

---

[2] FINASTRA, https://www.finastra.com/together (last visited July 16, 2025).

17. Security is a core component of Finastra's pitch to clients. An infographic on the company's website describes "customer obsession," "reliable, secure and trusted," and "co-innovation" as the "three key pillars" of its business.[3] Under "reliable, secure and trusted," Finastra states:




18. Finastra promises that it will keep secure the confidential and sensitive personal information entrusted to it. In its Privacy Policy, Finastra states:

> We do not share Personal Information outside of Finastra unless we have been given permission to do so, on behalf of one of our customers who has authorized us to do so in order to provide that Service, or as permitted or required by law, or as described in this Policy. . . . We will not collect, use or disclose any Personal Information that is provided to us, except as necessary to provide the Services that we have been contracted to provide or as

---

[3] *Id.*

permitted or required by law.[4]

19. Notwithstanding these extensive security promises, from October 31, 2024 to November 8, 2024, Finastra experienced a data breach that publicly exposed Plaintiff and Class Members' PII. On information and belief, Finastra obtained Plaintiff and Class Members' data from its financial institution clients, who use Finastra's software and services.

20. On November 8, 2024, an individual or individuals using the username "abyss0" posted on "BreachForums," a cybercrime internet forum, stating: "today we list for sale Finastra.com DataBreach, dated 2024 Nov. In total 400gb~ zipped."[5]

21. Media reports have repeatedly suggested that Finastra may have paid the hacker a ransom for the data.[6]

22. On January 7, 2025, Defendant released notification letters to victims of the data breach advising that their personal information was accessed and

[4] Finastra, *Privacy Policy* (Nov. 1, 2024), https://www.finastra.com/privacy-policy (last visited July 17, 2025).

[5] Brian Krebs, Fintech Giant Finastra Investigating Data Breach, Krebs on Security (Nov. 19, 2024), https://krebsonsecurity.com/2024/11/fintech-giant-finastra-investigating-data-breach/ (last visited July 17, 2025).

[6] Ionut Arghire, *Financial Software Firm Finastra Investigating Data Breach*, SecurityWeek (Nov. 21, 2024), https://www.securityweek.com/financial-software-firm-finastra-investigating-data-breach/ (last visited July 17, 2024); Filip Truta, *Finastra Issues 'Data Breach' Notices to Individual Customers Following 2024 Hacker Incident*, Bitdefender (February 19, 2025), https://www.bitdefender.com/en-us/blog/hotforsecurity/finastra-data-breach-notice-hacker-incident (last visited July 17, 2025); *see also Pocholo Legaspi*, Revisiting the Finastra Data Breach: What Went Wrong? Admin By Request (May 5, 2025), https://www.adminbyrequest.com/en/blogs/revisiting-the-finastra-data-breach-what-went-wrong.

compromised. Finastra has admitted that exfiltrated information includes names, social security numbers, dates of birth, and financial account numbers.

23. Despite Finastra's notice, Plaintiff and Class Members remain in the dark regarding the malware used and the steps that Finastra has taken to secure their PII moving forward.

24. Defendant was familiar with its obligations–created by contract, industry standards, common law, and representations to its customers–to protect customer and family information. Finastra acknowledges these obligations in its Privacy Policy:

> Whether acting as a data controller, a data processor or data intermediary, Finastra is required to comply with all applicable laws and regulations protecting the privacy of Personal Information in the jurisdictions where Finastra conducts business. . . . We may amend this Policy from time to time, should it become necessary or advisable to do so to comply with regulatory requirements or best practices.[7]

25. Plaintiff and Class Members had the reasonable expectation that Defendant would comply with its obligations related to their PII. Defendant owed Plaintiff and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII.

26. Defendant failed to comply with its obligations, resulting in the Data Breach. Class Members now face years of constant surveillance of their financial and personal records.

---

[7] Finastra, *Privacy Policy* (Nov. 1, 2024), https://www.finastra.com/privacy-policy (last visited July 17, 2025).

27. Finastra has provided no assurances that all personal data has been either recovered or destroyed or that the company has sufficiently improved its data security practices to the extent necessary to avoid a future similar intrusion into its systems.

**B. The Data Breach Puts Class Members at Increased Risk of Fraud and Identity Theft.**

28. An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

29. Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiff and Class Members' finances are now at risk due to the Data Breach.

30. Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[8] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims reported emotional distress.[9] Victims of identity theft can experience financial damage as

[8] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?,* IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited June 16, 2025).

[9] *Id.*

thieves run up debts into the tens of thousands. These victims can have their credit history destroying impairing their ability to obtain a loan, a mortgage, or even to lease housing. Victims of identity theft can experience substantial legal complications due to breaches. These risks and vulnerabilities are ongoing.

31. Plaintiff and members of the Class are now in the position of having to take steps to mitigate these damages caused by the Data Breach. Once the use of compromised PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[10]

32. Defendant failed to protect and safeguard Plaintiff and Class Members' private information, in fact failing to adhere to even its most basic obligations. As a result, Plaintiff and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## V. CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following proposed classes:

**National Class**: All natural persons in the United States whose Personally

[10] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, https://idtheftcenter.org/wp-content/uploads/2021/09/Aftermath2013.pdf (last visited June 16, 2025).

Identifiable Information was compromised as a result of the Data Breach.

**Illinois Class**: All natural persons in the state of Illinois whose Personally Identifiable Information was compromised as a result of the Data Breach.

34. Excluded from the Classes are Defendant, any entity in which a Defendant has a controlling interest, any of the officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any Judge to whom this case is assigned, and his or her immediate family.

35. The definitions of the Classes may be further modified or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

36. **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Classes or the identity of Class Members because such information is in the exclusive control of Defendant. Nevertheless, based on published reports, the Classes are so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendant.

37. **Commonality and Predominance:** This action involves common questions of law and fact as to all members of the Classes, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

(a) Whether Defendant engaged in the conduct alleged herein;

(b) Whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff and Class Members' PII;

(c) Whether Defendant's failure to implement effective security measures to protect Class Member Private Information was negligent;

(d) Whether Defendant timely informed Plaintiff of the Data Breach;

(e) Whether Plaintiff and Class Members are entitled to injunctive relief;

(f) Whether Plaintiff and Class Members are entitled to declaratory relief; and

(g) Whether, as a result of Defendant's conduct, Plaintiff and the Class are entitled to damages and equitable relief.

38. **Typicality:** Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other members of the Classes that she seeks to represent, and there are no defenses that are unique to Plaintiff. Plaintiff and Class Member claims and injuries arise from the same facts and are based on the same law.

39. **Adequacy:** Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of other Class Members she seeks to represent; Plaintiff has retained competent counsel that is experienced in complex class action litigation; and Plaintiff intends to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

40. **Superiority:** A class action is superior to other available methods for

fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Defendant, so, absent class-wide adjudication, it would be virtually impossible for Class Members to seek individual redress against Defendant's wrongful conduct.

## VI. CAUSES OF ACTION

### <u>COUNT ONE</u>
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

41. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

42. As part of its business, Defendant solicited, collected, and maintained Plaintiff and Class Members' PII.

43. Defendant's business depended upon collecting Plaintiff and Class Members' PII because the software it provides requires the use and maintenance of Plaintiff and Class Members' PII.

44. Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risks of harm to Plaintiff and Class Members collecting, employing, maintaining, storing, and managing PII.

45. Upon collecting, accepting custody of, and storing Plaintiff and Class Members' PII, Defendant undertook and owed a duty to Plaintiff and Class

Members to safeguard and protect their PII using reliable, proven, effective, and safe methods for doing so.

46. Defendant also had a duty to promptly notify Plaintiff and Class Members of any breaches so that Plaintiff and Class Members could take necessary and appropriate steps to minimize their losses and protect their security after any breach.

47. Defendant was fully aware that Plaintiff and Class Members' PII was sensitive, that Plaintiff and Class Members would suffer extensive and myriad injuries if their PII was wrongfully disclosed, and that providing sufficient security for the collected PII was of critical importance.

48. Plaintiff and Class Members were foreseeable victims of any insufficient security protocols and practices by Finastra. Finastra had a duty of care to not subject Plaintiff and Class Members to an unreasonable risk of injury. Defendant knew that cyber criminals frequently use cyberattacks to steal sensitive PII and exploit it for financial gain to the substantial detriment of the individuals to whom the PII pertains.

49. Defendant's duty to Plaintiff and Class Members extended to protecting them from the foreseeable risk of third parties' criminal conduct.

50. Defendant duties to Plaintiff and Class Members also included:

a. alerting Plaintiff and Class Members of any unauthorized access, data theft, data breach, or security incident that either compromised or potentially comprised their PII;

b. using reasonable and adequate technology and security procedures to promptly detect security incidents, data breaches, or unauthorized access into servers, email systems, and company networks;

c. safeguarding Plaintiff and Class Members' PII by employing adequate and reasonable security practices and technology;

d. using reasonable care in creating, maintaining, and testing Defendant's email accounts, networks, policies and procedures, employee trainings, and security protocols, to ensure that Plaintiff and Class Members' PII was safe and reasonably secure from theft, publication, or disclosure.

51. Only Finastra was capable of securing its own systems and programs and making sure that the security measures employed were sufficient to safeguard Plaintiff and Class Members' PII.

52. Finastra breached its duty of care because it failed to adequately safeguard the PII belonging to Plaintiff and Class Members. Defendant's breaches included, but were not limited to:

a. Failing to adequately train and test its employees on sufficiently and safely sending and storing PII;

b. Failing to reasonably implement protocols for promptly detecting security incidents, data breaches, or unauthorized access to sensitive data, including Plaintiff and Class Members' PII;

c. Failing to use adequate and reasonable security systems and policies for safeguarding the PII it possessed;

d. Failing to train its employees to avoid phishing emails and test employees' conduct upon receipt of suspicious emails;

e. Failing to enforce security policies for protecting Plaintiff and Class Members' PII;

f. Failing to use reasonable and adequate industry standard security systems and devices for emails, including SPAM filters, DMARC compliance, and/or Sender Policy Framework compliance;

g. Failing to ensure that Finastra did not maintain or keep PII on its systems, servers, and devices for longer than necessary;

h. Failing to alert Plaintiff and Class Members, in a timely and prompt manner, of the Data Breach that compromised the security of their PII.

i. Failing to use reasonable care in protecting, maintaining, using, and erasing the PII that Finastra possessed.

53. Finastra's failure to fulfill these duties was reckless, grossly negligent, and wrongful considering the foreseeable and substantial risks that such a failure would entail.

54. Plaintiff and Class Members have already suffered injuries and are at imminent risk of additional injuries as a foreseeable and proximate result of Defendant's negligence.

55. Plaintiff and Class Members' injuries have been compounded by Defendant's breach of its duty to promptly alert Plaintiff and Class Members about the Data Breach. Defendant's failure to provide timely notice of the Data Breach barred Plaintiff and Class Members from quickly acting to mitigate damages resulting from the loss and exposure of their PII.

56. Plaintiff and Class Members' PII has been publicly exposed as a direct result of Defendant's breach of its duty to use reasonable care to adequately protect and secure Plaintiff and Class Members' PII.

57. Plaintiff and Class Members have suffered and will continue to suffer damages which are the direct and proximate result of Defendant's negligent conduct. These damages include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff and Class Members' PII has also diminished the value of their PII.

58. Defendant's wrongful acts and omissions constituted and continue to constitute common law negligence.

59. Plaintiff and Class Members are accordingly entitled to damages in an amount to be proven at trial.

## COUNT TWO
## NEGLIGENCE PER SE
## (On Behalf of Plaintiff and the Nationwide Class)

60. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

61. The FTC Act prohibits "unfair practices in or affecting commerce."[11] It imposed and continues to impose on Defendant a duty to Plaintiff and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiff and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumer's confidential data as an unfair act or practice prohibited by Section 5 of the FTC Act.[12]

62. Defendant's failure to use reasonable and appropriate methods to guard Plaintiff and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits.

63. Defendant violated the FTC Act by failing to comply with industry-standard data security practices, as described above.

64. Defendant also violated the FTC Act by failing to provide reasonable, fair, and timely notice to Plaintiff and Class Members regarding the Data Breach.

65. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or

---

[11] 15 U.S.C. § 45(a).

[12] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.[13]

66. Unfair acts or practices that violate the FTC Act also violate FDUTPA.

67. Defendant violated FDUTPA because it violated the FTC Act, as alleged above. In addition, Defendant violated FDUTPA because it made representations regarding the data security of its product offerings and services and those representations were false and misleading to consumers, including Plaintiff and Class Members. Finastra's representations regarding the safety and security of its products and services were also material, as Plaintiff and Class Members would never have allowed Finastra to access, collect, or maintain their data had they known that Finastra's representations regarding the safety and security of its products and services were false.

68. Defendant's collection and maintenance of Plaintiff and Class Members' PII were actions central to its business and affected commerce.

69. The class of people that the FTC Act and FDUTPA were intended to protect include Plaintiff and Class Members.

70. The injuries that Plaintiff and Class Members suffered and continue to suffer and that resulted from the data breach are the types of injuries that the FTC Act and FDUTPA were intended to prevent.

[13] Fla. Stat. § 504.204(1).

71. As a direct and proximate result of Defendant's negligence and violations of the FTC Act, Plaintiff and Class Members have suffered and will continue to suffer injury, which include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

72. As a direct and proximate result of Defendant's negligence and violations of FDUTPA, Plaintiff and Class Members received services that were less valuable than what Finastra was obligated to provide and for which Finastra was paid, either directly or indirectly, by Plaintiff and Class Members. Finastra marketed, as a central component of its services and business offerings, security for the data it ingested and received. The services and business offerings that Finastra ultimately provided were less valuable than what should have been delivered given Finastra's failure to fulfill the data security promises that were central to its product offerings.

73. Plaintiff and the Class are accordingly entitled to damages in amounts to be proven at trial.

**COUNT THREE**
**GROSS NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

74. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

75. Plaintiff and Class Members entrusted Finastra with highly-sensitive and inherently personal private data subject to laws on confidentiality and unfair trade practices.

76. In collecting, obtaining and storing Plaintiff and Class Members' PII, Finastra owed a duty of reasonable care in safeguarding the PII.

77. Finastra's networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff and Class Members' PII were secured from unauthorized access.

78. Finastra's networks, systems, protocols, policies, procedures and practices were not reasonable given the sensitivity of the Plaintiff and Class Members' private data.

79. Finastra did not comply with federal laws and rules, including the Federal Trade Commission Act, concerning the use of safekeeping of this private data. The FTC Act prohibits "unfair practices in or affecting commerce."[14] It imposed and continues to impose on Defendant a duty to Plaintiff and Class

[14] 15 U.S.C. § 45(a).

Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiff and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumer's confidential data as an unfair act or practice prohibited by Section 5 of the FTC Act.[15] Defendant's failure to use reasonable and appropriate methods to guard Plaintiff and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits. Defendant violated the FTC Act by failing to comply with industry-standard data security practices. Defendant also violated the FTC Act by failing to provide reasonable, fair, and timely notice to Plaintiff and Class Members regarding the Data Breach.

80. Upon learning of the Data Breach, Finastra should have immediately disclosed the Data Breach to Plaintiff and Class Members, credit reporting agencies, the Internal Revenue Service, financial institutions and all other third parties with a right to know and the ability to mitigate harm to Plaintiff and Class Members as a result of the Data Breach.

81. Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed,

[15] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

implemented, maintained, monitored, and tested to ensure that Plaintiff and Class Members' PII were secured from unauthorized access, Finastra ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

82. Finastra's behavior establishes facts evidencing a reckless disregard for Plaintiff and Class Members' rights.

83. Finastra, therefore, was grossly negligent.

84. Finastra's negligence is directly linked to Plaintiff and Class Members' injuries. As a result of Finastra's reckless disregard for Plaintiff and Class Members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class Members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff and Class Members' PII has also diminished the value of their PII.

85. The harm to Plaintiff and Class Members was a proximate, reasonably foreseeable result of Finastra's breaches of the applicable laws and regulations.

86. Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT FOUR**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

87. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

88. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.[16]

89. The FTC Act prohibits "unfair practices in or affecting commerce."[17] It imposed and continues to impose on Defendant a duty to Plaintiff and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiff and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumer's confidential data as an unfair act or practice

[16] Fla. Stat. § 504.204(1).

[17] 15 U.S.C. § 45(a).

prohibited by Section 5 of the FTC Act.[18] Defendant's failure to use reasonable and appropriate methods to guard Plaintiff and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits. Defendant violated the FTC Act by failing to comply with industry-standard data security practices. Defendant also violated the FTC Act by failing to provide reasonable, fair, and timely notice to Plaintiff and Class Members regarding the Data Breach.

90. Unfair acts or practices that violate the FTC Act also violate FDUTPA. Defendant violated FDUTPA because it violated the FTC Act.

91. Defendant also violated FDUTPA because (1) it made representations regarding the data security of its product offerings and services, (2) those representations were false and misleading to consumers, including Plaintiff and Class Members, and (3) Finastra's representations regarding the privacy and data security of its products and services were material, as Plaintiff and Class Members would never have allowed Finastra to access, collect, or maintain their PII had they known that Finastra's representations regarding the safety and security of its products and services were false.

[18] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

92. FDUTPA applies to Defendant's conduct because, upon information and belief, Defendant made its material and false representations from within Florida.

93. Defendant's collection and maintenance of Plaintiff and Class Members' PII were actions central to its business and affected commerce.

94. The class of people that the FTC Act and FDUTPA were intended to protect include Plaintiff and Class Members.

95. As a direct and proximate result of Defendant's violations of FDUTPA, Plaintiff and Class Members suffered actual damages. Plaintiff and Class Members received services that were less valuable than what Finastra was obligated to provide and for which Finastra was paid, either directly or indirectly, by Plaintiff and Class Members. As Finastra's marketing materials illustrate, Finastra promised, as a core component of its services and business offerings, security for the data it ingested and received. The services and business offerings that Finastra ultimately provided were less valuable than what should have been delivered and what Finastra promised to deliver given Finastra's failure to fulfill the data security and privacy promises that were central to its product offerings.

96. Plaintiff and the Class are accordingly entitled to damages in amounts to be proven at trial.

**<u>COUNT FIVE</u>**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(On Behalf of Plaintiff and the Illinois Class)**

97. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

98. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Business Practices Act") makes unlawful "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce . . . ."[19]

99. The Business Practices Act states that "[i]n construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."[20]

100. The FTC Act prohibits "unfair practices in or affecting commerce."[21] It imposed and continues to impose on Defendant a duty to Plaintiff and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiff and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumer's confidential data as an unfair act or practice

[19] 815 Ill. Stat. § 505/2.

[20] *Id.*

[21] 15 U.S.C. § 45(a).

prohibited by Section 5 of the FTC Act.[22] Defendant's failure to use reasonable and appropriate methods to guard Plaintiff and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits. Defendant violated the FTC Act by failing to comply with industry-standard data security practices. Defendant also violated the FTC Act by failing to provide reasonable, fair, and timely notice to Plaintiff and Class Members regarding the Data Breach.

101. Each of the unfair acts or practices alleged above as violating the FTC Act also violated the Business Practices Act. As illustrated by the interpretations of the Federal Trade Commission, each of these acts or practices offends public policy, are unethical, unscrupulous, immoral, or oppressive, and cause substantial injury to consumers, including Plaintiff and the Class.

102. Defendant also violated the Business Practices Act because it made representations regarding the data security of its product offerings and services and those representations were false and misleading. Finastra's representations regarding the safety and security of its products and services were material, as Plaintiff and Class Members would never have allowed Finastra to access, collect, or maintain their data had they known that Finastra' s representations regarding

[22] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

the safety and security of its products and services were false. Finastra also intended for consumers to rely on its representations, as the company treated the supposed security of its services as a major selling point.

103. Defendant's collection and maintenance of Plaintiff and Class Members' PII were actions central to its business and affected commerce.

104. The class of people that the FTC Act and the Business Practices Act were intended to protect include Plaintiff and Class Members.

105. The injuries that Plaintiff and Class Members suffered and continue to suffer and that resulted from the data breach are the types of injuries that the FTC Act and the Business Practices Act were intended to prevent.

106. As a direct and proximate result of Defendant's violations of the FTC Act and the Business Practices Act, Plaintiff and Class Members received services that were less valuable than what Finastra was obligated to provide and for which Finastra was paid, either directly or indirectly, by Plaintiff and Class Members. Finastra marketed, as a central component of its services and business offerings, security for the data it ingested and received. The services and business offerings that Finastra ultimately provided were less valuable than what should have been delivered given Finastra's failure to fulfill the data security promises that were central to its product offerings.

107. In addition, as a direct and proximate result of Defendant's violations of the FTC Act and the Business Practices Act, Plaintiff and Class members suffered actual injuries that included exposure to a heightened, imminent risk of fraud,

identity theft, and financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff and Class Members' PII has also diminished the value of their PII.

108. Plaintiff and the Class are accordingly entitled to damages in amounts to be proven at trial.

## COUNT SIX
## BREACH OF IMPLIED CONTRACTS
## (On Behalf of Plaintiff and the Nationwide Class)

109. Plaintiff incorporates paragraphs 1 through 40 as though fully set forth herein.

110. Plaintiff and Class Members provided their PII to Finastra in order to obtain services.

111. By providing their PII, and upon Finastra's acceptance of such information, Plaintiff and Class Members on one hand, and Defendant on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Finastra was obligated to take reasonable steps to secure and safeguard that information.

112. Finastra had an implied duty of good faith to ensure that the PII of Plaintiff and Class Members in its possession was only used in accordance with their contractual obligations.

113. Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Finastra expressly assented to these terms in its Privacy Policy.[23]

114. Under these implied contracts for data security, Finastra was further obligated to provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access to, or theft of, their PII.

115. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services provided by Defendant or providing the PII required by Defendant.

116. Finastra breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff and Class Members' PII, resulting in the Data Breach. Finastra unreasonably interfered with the contract benefits owed to Plaintiff and Class Members.

117. Further, on information and belief, Finastra has not yet provided Data Breach notifications to some affected Class Members who may already be victims

[23] Finastra, *Privacy Policy* (Nov. 1, 2024), https://www.finastra.com/privacy-policy (last visited July 17, 2025).

of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Finastra. These Class Members are unaware of the potential source for the compromise of their PII.

118. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

119. As a result of Finastra's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

120. Neither Plaintiff, nor Class Members, nor any reasonable person would have provided their PII to Finastra had Finastra disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

121. As a result of Defendant's breach, Plaintiff and the Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

122. As a result of Defendant's breach, Plaintiff and the Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result,

Plaintiff and the Class Members have suffered actual identity theft and the inability to control their PII.

123. Accordingly, Plaintiff and Class Members have been injured as a result of Finastra's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT SEVEN
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING
## (On Behalf of Plaintiff and the Nationwide Class)

124. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

125. Plaintiff and Class Members were the intended beneficiaries of contracts with Defendant.

126. These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiff and Class Members' PII and to comply with industry standards and federal and state laws and regulations for the security of this information.

127. Defendant entered into special relationships with Plaintiff and Class Members, who entrusted their confidential PII to Defendant and paid for the services that Defendant ultimately provided, either directly or indirectly.

128. Defendant promised and was obligated to protect the confidentiality of Plaintiff and Class Members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiff and Class Members' PII, which resulted in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiff and Class Members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII of Plaintiff and Class Members in Defendant's possession.

129. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services they received and entrusting Defendant with the confidential PII.

130. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiff and Class Members have suffered actual damages in an amount equal to the difference in the value between services with

reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

131. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

132. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

133. As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

**COUNT EIGHT**
**UNJUST ENRICHEMNT**
**(On Behalf of Plaintiff and the Nationwide Class)**

134. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

135. Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services.

136. Finastra collected, maintained, and stored the PII of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class Members. The collection, maintenance, and storage of Plaintiff and Class Members' PII was a central part of Finastra's business and ability to gain profits.

137. The money that Defendant directly or indirectly received from Plaintiff and Class Members should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

138. As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

139. Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class Members paid for.

140. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful

and inequitable sums received by Defendant traceable to Plaintiff and Class Members.

**COUNT NINE**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

141. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

142. Plaintiff and Class Members have stated claims against Defendant based on negligence, negligence per se, gross negligence, breach of implied contracts, breach of implied duty of good faith and fair dealing, and unjust enrichment.

143. Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiff and Class Members, as evidenced by the Data Breach.

144. As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiff and Class Members going forward.

145. Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and Class Members. Specifically, Plaintiff and Class Members seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and

maintain reasonable security measures on behalf of Plaintiff and Class Members to comply with their data security obligations.

## VII. PRAYER FOR RELIEF

146. Plaintiff, on behalf of herself and the proposed Classes, requests that the Court:

(a) Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel for Plaintiff to represent the classes.

(b) Find that Finastra breached its duties to safeguard and protect the PII of Plaintiff and Class Members that was compromised in the Data Breach;

(c) Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

(d) Award equitable, injunctive and declaratory relief as may be appropriate;

(e) Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

(f) Award pre-judgment and post-judgment interest as prescribed by law; and

(g) Grant additional legal or equitable relief as this Court may find just and proper.

DATED: July 22, 2025

Respectfully submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**

By: */s/ Andrew J. Fuller*

Thomas E. Loeser, Cal Bar No. 202724
(*pro hac vice* to be filed)
Andrew J. Fuller, Fla. Bar No. 1021164
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (206) 299-4184
tloeser@cpmlegal.com
afuller@cpmlegal.com

*Attorneys for Plaintiff*